# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00146-MR-WCM

| | |
|---|---|
| JASON BLACKWELL, as Administrator of the Estate of Joshua Shane Long, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>DERRICK PALMER, Sheriff of Cherokee County, et al., )<br>)<br>)<br>Defendants. )<br>_____ ) | **ORDER APPROVING WRONGFUL DEATH SETTLEMENT** |

**THIS MATTER** is before the Court on the Plaintiff's Consent Motion to Approve Wrongful Death Settlement [Doc. 45].

## BACKGROUND

This action arises from the death of Joshua Shane Long ("the Decedent") at the Cherokee County Detention Center on July 12, 2018. The Plaintiff Jason Blackwell, as administrator of the Decedent's Estate, asserts claims against the Defendants for violations of federal civil rights laws pursuant to 42 U.S.C. § 1983 and 1988, wrongful death, violation of N.C. Gen. Stat. § 162-55, and an action on the Sheriff's bond pursuant to N.C. Gen. Stat. § 58-76-1, et seq.

On June 17, 2020, the Plaintiff filed a Complaint in the United States District Court for the Western District of North Carolina against Cherokee County; the Sheriff of Cherokee County, Derrick Palmer; the Cherokee County Sheriff's Department; a number of Cherokee County Sheriff's Department employees[1], including Mark Thigpen, Mark Patterson, Jeremy Bresch, Frank Daly, Larry Bolen, Glenn Holloway, and Tiffany Enloe; and Ohio Casualty Insurance Co., Ohio Casualty Corp., and Liberty Mutual Insurance Co. as sureties. [Doc. 1]. The Defendants answered the Plaintiff's Complaint. [Docs. 21, 22]. On September 18, 2020, the Court issued a Pretrial Order and Case Management Plan, establishing deadlines for Rule 26 disclosures, expert reports, discovery, mediation, dispositive motions, and trial. [Doc. 30]. During discovery, the parties exchanged initial disclosures and thousands of documents, including video footage from the Detention Center. On December 4, 2020, the Plaintiff identified and submitted written reports from three retained experts (two doctors and one jail administrator). On February 3, 2020, the Defendants identified and submitted expert reports from two experts (two doctors).

---

[1] The Plaintiff also sued Cherokee County Sheriff's Department employees Michael Faggard and Patrick Williams; however, the Plaintiff subsequently filed a stipulation of dismissal as to these Defendants. [Doc. 27].

On August 27, 2021, the parties and their counsel attended a mediated settlement conference. Although no settlement was reached at the mediation, the parties continued settlement negotiations with counsel for Defendant Sheriff. On September 16, 2021, the parties agreed to settle. As the sole beneficiary of the Decedent's estate is a minor child, the Plaintiff filed the present motion, seeking judicial approval of the parties' settlement.[2] [Doc. 45].

On December 7, 2021, this matter came on for final hearing before the Court. Present for the proceeding were the Plaintiff Jason Blackwell; attorneys Edward Winslow Taylor and W. Ellis Boyle, as counsel for the Plaintiff; attorney Sean Perrin, as counsel for Defendants Cherokee County, Cherokee County Sheriff's Department, and Defendants Palmer, Patterson, and Daly; attorney Patrick Flanagan, as counsel for Defendants Bresch, Bolen, Holloway, and Enloe; attorney Stephen P. Agan as Guardian Ad Litem for the minor child; and Christina Rubio, mother of the minor beneficiary A.L.J.R.[3] Prior to the hearing, the Court reviewed the following documents

---

[2] The Plaintiff also has filed a Petition [Doc. 46] for the creation of a trust for the benefit of the minor child. That Petition is addressed by a separate Order entered contemporaneously herewith.

[3] The full name and date of birth of the minor child are included in a Sealed Addendum entered contemporaneously with this Order.

3

with respect to the Plaintiff's Consent Motion to Approve Wrongful Death Settlement and the Plaintiff's Petition for Creation of Trust: (1) the Settlement and Release of All Claims [Doc. 45-1]; (2) the Affidavit of Jason Blackwell [Doc. 45-2]; (3) the Affidavit of Stephen Agan [Doc. 45-3]; (4) the Affidavit of W. Ellis Boyle [Doc. 45-4]; (5) the Affidavit of E. Winslow Taylor [Doc. 45-5]; and the Preservation Trust Agreement [Doc. 46-1].

## **FINDINGS OF FACT**

1. To assess the reasonableness of the Settlement and Release Agreement, at the hearing on December 7, 2021, the Court requested that counsel for the Plaintiff and the Defendants give a forecast of their trial evidence and provide a candid evaluation of the strengths and weaknesses of the Plaintiff's claims and any defenses thereto. The parties complied with the Court's request and proffered the following details surrounding the factual and legal circumstances of this matter.

2. The Plaintiff's claims arise from the Defendants' alleged failure to provide the Decedent with any medical screening or to react to the known issues of his potential ingestion of an unknown quantity of a potentially dangerous substance and then failing to timely send him for emergency medical treatment when he showed symptoms of drug-related medical problems during his time spent in their exclusive custody and control, which

4

resulted in his death. The autopsy results showed that the Decedent died of a methamphetamine overdose. He was 31 years old at the time of his death.

3. Based on the evidence obtained during discovery, the Plaintiff's counsel stated that they believed that they had a strong case of liability premised on the Defendants' failure to provide the Decedent with a prompt medical evaluation after his arrest despite the Decedent's obvious intoxication and his ingestion of an unknown substance as observed by officers at the scene of his arrest. Further, the Plaintiff's counsel stated that they believed that they could make a strong showing that the officers acted with deliberate indifference to a serious medical need by failing to contact emergency medical services or by failing to timely send the Decedent for emergency medical treatment when he began showing symptoms of a drug-related problem while he was detained in the facility, and that the Defendants were improperly trained on procedures for seeking medical clearance and for conducting rounds for observation of intoxicated detainees. Counsel indicated that they had retained the services of two experts who could testify that the passage of time between the Decedent's ingestion of an unknown substance at the time of his arrest and his subsequent death was consistent with the timeline for death from methamphetamine toxicity, which was the cause of death determined by the coroner.

4. Despite the noted strengths of the Plaintiff's case, counsel also acknowledged the inherent uncertainties that exist in proceeding to a trial, including the risk of a defense verdict, thereby recovering nothing on behalf of the Estate. Counsel further noted the existence of various defenses that could be asserted by the Defendants at both the summary judgment stage and at trial, including the defenses of qualified immunity and public official immunity.

5. As for the strengths of the Defendants' case, defense counsel noted that there was evidence indicating that the Decedent had been asked when he arrived at the Detention Center whether he wanted to seek medical treatment, and that he had refused. Additionally, defense counsel noted the availability of the defenses of qualified immunity and public official immunity. However, defense counsel conceded that at least some of the Defendants were unlikely to prevail on such defenses, particularly in light of Defendant Daly's testimony that had he known prior to the Decedent's delivery to the Detention Center that the Decedent had ingested an unknown substance, he would have directed the arresting officers to transport him to a medical facility for evaluation. Additionally, defense counsel noted, the video recordings from the detention facility indicated that the officers on duty failed to make proper rounds to check on the Decedent.

6. In light of these considerations, as well as the uncertainty of submitting the case to a jury, both the Plaintiff's and the Defendants' counsel stated they believed that the settlement reached is a fair resolution to the Plaintiff's claims.

7. At the hearing held on December 7, 2021, the Guardian Ad Litem, opined that the settlement is fair and reasonable, in the best interest of the minor child A.L.J.R., and therefore recommended the settlement be approved.

8. At the hearing held on December 7, 2021, Christina Rubio, as the mother and legal guardian of the minor child A.L.J.R., acknowledged that she:

(a) had read the settlement documents filed in this matter, including the Settlement and Release Agreement, and that she understands and assents to the terms thereof.

(b) had an adequate opportunity to confer with counsel regarding the settlement of this matter.

(c) understands that the settlement documents propose that certain consideration be paid for the benefit of the minor child A.L.J.R.

(d) believes, in her capacity as mother and legal guardian of the minor child, that the proposed settlement is fair and reasonable for the

minor child under the circumstances of this case, particularly as to the nature of the settlement, the amount of monetary payments to be made under the settlement, and the proposed disbursements of the settlement funds.

      (e)    understands that, if the Court approves the Settlement and Release Agreement and creates a Trust as requested, the consideration due will be provided as described in the settlement documents filed herewith.

      (f)    understands that, if the Court approves the Settlement and Release Agreement and creates a Trust as requested, such trust funds may not be used by her to discharge any legal obligation that she has as the mother of the minor child.

      (g)    understands that, if the Court approves the Settlement and Release Agreement, the provision of the consideration for the settlement by the Defendants will terminate any claims of the minor child against the Defendants. She further acknowledged that she understands that her decision to accept the Settlement and Release Agreement on behalf of the minor child (if such agreement is approved by the Court) will bind the minor child and said child will be enjoined from seeking any future redress against the Defendants, pursuant to the Settlement and Release Agreement, based upon the acts and omissions alleged in the Complaint.

8

Case 1:20-cv-00146-MR-WCM   Document 48   Filed 01/03/22   Page 8 of 13

9. Based on all the foregoing, the Court finds and concludes that the Settlement and Release Agreement is fair and reasonable under all of the circumstances of this case; that the consideration to be provided under the terms of the Settlement and Release Agreement is fair and reasonable; and that the proposed disbursement of such consideration is fair and reasonable.

10. The Court finds that the attorney's fees and costs of litigation as requested by Plaintiff's counsel are fair and reasonable upon considering the factors outlined by In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010), including the skill of the work performed and the degree of success obtained for the minor child. Specifically, the Court finds that this litigation, which involved issues of medical causation, federal civil rights liability, and governmental immunity, required a high degree of specialized skill and knowledge on the part of counsel. While the case was settled relatively early in the stages of litigation, counsel was required to perform an considerable amount of work conducting discovery and procuring the testimony of expert witnesses to support the Plaintiff's claims. This resulted in a large amount of costs being advanced by the Plaintiff's counsel, with the potential that such expenses might not be recouped in the event that the case was dismissed or otherwise decided in the Defendants' favor. Additionally, by settling this

matter before the summary judgment stage, counsel did not incur additional costs in briefing such motions and preparing the matter for trial. All counsel of record (as well as the Plaintiff, who himself is a practicing attorney) concurred that the Plaintiff's counsel performed excellent work in this matter and that, but for the skill and perseverance of counsel, the Plaintiff likely would not have recovered nearly as much as what was agreed upon in the Settlement Agreement.

## **CONCLUSIONS OF LAW**

**WHEREFORE,** based upon the foregoing findings of fact, the Court concludes as a matter of law that:

1. Minors, because they are legally incompetent to transact business or give consent for most purposes, need responsible, accountable adults to handle property or benefits to which they are or become entitled. N.C. Gen. Stat. § 35A-1201(a)(6). Moreover, where minors are entitled to receive damages pursuant to the settlement of a wrongful death action, such settlement must be approved by the Court, even though the minors are not parties to the wrongful death action. See N.C. Gen. Stat. § 28A-13-3(23).

2. The Plaintiff, Jason Blackwell, acting in his capacity as Administrator for the Estate of the Decedent, is competent in all respects and is able to understand the ramifications of the Settlement and Release

Agreement, as well as the effect such agreement would have upon the minor child, and is competent and able to execute his duties accordingly.

3. Attorney Stephen Agan, acting in his capacity as the Guardian ad Litem, is competent in all respects and is able to understand the ramifications of the Settlement and Release Agreement, as well as the effect such agreement would have upon the minor child, and is competent and able to execute his duties accordingly.

4. Cristina Rubio, acting in her capacity as parent and guardian for the minor child, is competent in all respects and is able to understand the ramifications of the Settlement and Release Agreement, as well as the effect such agreement would have upon the minor child, and is competent and able to execute her duties accordingly.

5. Having reviewed the details of the proposed disbursement of funds for the minor child, including payment dates and amounts, the Court finds that the extent, nature, and amount of recovery for the minor child are all fair and reasonable, and the disbursement of such funds as provided in the Settlement and Release Agreement is in the best interests of the minor child.

6. The disbursement of the settlement proceeds, as set forth in the Settlement and Release Agreement, benefits the minor child by the way in

which the funds are to be disbursed. The parties have specifically informed the Court that all are in agreement as to the manner of distribution set forth therein and are capable of carrying into effect the same.

7. The Plaintiff, Jason Blackwell, acting in his capacity as Administrator of the Estate of the Decedent, and Cristina Rubio, in her capacity as parent and guardian for the minor child, have bound the minor child herein in the same manner as if such minor had consented to the settlements as an adult.

8. The Settlement and Release Agreement should be approved.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Consent Motion to Approve Wrongful Death Settlement [Doc. 45] is **GRANTED**, and the parties' settlement of this matter is hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal with respect to all the Plaintiff's claims against the Defendants within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: January 3, 2022

Martin Reidinger
Chief United States District Judge